## JAMES MATTOON vs. E. W. BARNARD, Inspector of Election.

## ALBERT HORNER vs. E.W. BARNARD, Inspector of Election.

### MANDAMUS. BEFORE JUDD, C.J.

#### DECISION RENDERED FEBRUARY 23, 1892. NOT HITHERTO REPORTED.

Mandamus lies to compel Inspectors of Election to count ballots erroneously rejected, and to reject ballots erroneously counted, and then to deliver a certificate of election to the successful candidate.

A ballot should be rejected if the cross mark upon it is enclosed in a parenthesis.

Where inspectors of election had withdrawn a ballot because the number
of ballots exceeded by one the number of names checked off on the
list of voters, they should, upon discovering that they had by an over-
sight omitted to check off the name of one person who had voted, re-
count the ballots, including the one they had withdrawn.

## DECISION OF JUDD, C.J., DELIVERED ORALLY.

Although there is nothing in the statute excepting the right
of the person whose interests are affected to apply for a writ of
mandamus, yet I think it is a writ which will always lie against
a ministerial officer to require him to do any ministerial duty;
so I think that both the writs are properly brought. Certainly
if this was not the case, there might a great many frauds arise,
and, if the position is a good one, to-wit, that the opinion of the
majority of the inspectors is final and binding in all cases,
whenever made (and they must make their decisions immedi-
ately) unless there be a contested election, strictly in accordance
with this statute, I say these frauds never could be righted.

I suppose that if I should find these two votes in the first
precinct, that were not counted by the inspectors, to be legal and
entitled to be counted, the mandamus would have to be sus-
tained in that way; that is, I should direct the inspectors to
count those two ballots for Mattoon, as improperly rejected, and
thereupon to deliver him a certificate of election.

It is a very nice question and entirely new to me, because I
have not read the law carefully as regards the marking of
ballots. I regret very much indeed that these parentheses were
used in the statute. We know what parentheses are, and they
are called brackets very often. They are published both round
and in the square form. They are used to separate words typo-
graphically where quotation marks are not used. I suppose
the context of the law requiring a cross mark—requiring a voter
to mark a cross on the ballot, as the language of the statute is,
should control. I regret very much that this misleading char-
acter has been printed so many times in this Act. It is very
unfortunate with our constituency of illiterate voters, whom I
suppose do not know what a parenthesis is, and do not know

what its signifiicance is. But I am unable to come to the conclusion that Mr. Neumann urges upon me, that *that* is the correct method of marking a ballot. If I did, I should have to come to the other conclusion, that all the votes that did not contain that mark should be rejected; that is a contention that I would not sustain. If it had been printed by the officials who prepared the printed ballot—that is, if the parentheses had appeared on the printed ballot and the cross had been inserted between them, that would perhaps be a different question than if made by the voter. But, as has been well said, the object of this law is to prevent marks being made by which a ballot thereafter could be identified and a bribe secured on the shown fulfillment of the agreement.

I think the people who voted that way thought they were voting correctly, and it is unfortunate that the sample cross has been given in this way in the printed instructions to voters. But I have got to meet it, and I think that the law intends that a cross on the right hand side of the ballot be made by the voter, and nothing else; and for that reason I decline to make the writ peremptory on the application of Mr. Mattoon.

And, having come to this conclusion, I feel bound to say that in the second case, the application by Mr. Horner, that there is enough on the return made to the Minister of the Interior to indicate to my mind that the inspectors did then and there, wherever they signed that paper, make a new count, and they found that they had drawn out a ballot so as to make the number correspond with the number of persons voting, by mistake, and it was proper to count in the withdrawn ballot. Conscientious men should make a recount to see if they had made a mistake. The answer of Mr. Barnard shows that they had conscientiously thought they had made a mistake, through error in not checking off the name of the Portuguese who had voted in this case. The withdrawn ballot was for Mattoon, and I think it is proper to count that vote for him, and I think it is proper in that case not to order a certificate to issue, for the ballots for Mr. Mattoon and Mr. Horner would each be 79, making a tie. If a new election is requisite the Legislature will order it, I cannot.

Both petitions are dismissed, petitioners in each case to pay costs.